[No. 10132.   Department Two.   June 14, 1912.]

## THE STATE OF WASHINGTON, *Respondent*, v. JAKE RUBENSTEIN, *Appellant*.[1]

RECEIVING STOLEN GOODS—EVIDENCE—SUFFICIENCY. A conviction of larceny by receiving stolen goods is sustained where it appears that the accused received ostrich plumes which he knew had been stolen and sold them with intent to deprive the owner thereof.

SAME—INSTRUCTIONS. In a prosecution for larceny by receiving and disposing of stolen goods, it is error to instruct upon the subject of defendant's knowledge respecting the theft, that knowledge of any particular fact may be inferred from the knowledge of such other facts as would put an ordinary prudent man upon inquiry, and that the state must prove beyond a reasonable doubt either that defendant had actual knowledge that the goods were stolen or was in possession of facts that would put an ordinary prudent man on inquiry; since it compelled the jury to infer the fact of knowledge instead of leaving the inference to be drawn by the jury.

CRIMINAL LAW—APPEAL—RECORD—INSTRUCTIONS. Upon appeal in a criminal case, an admittedly erroneous instruction cannot be disregarded as an inadvertence, or as incorrectly reported, as the record is conclusive.

DUNBAR, C. J., dissents.

Appeal from a judgment of the superior court for King county, Gay, J., entered September 30, 1911, upon a trial and conviction of larceny.   Reversed.

*Reynolds, Ballinger & Hutson*, for appellant.

*John F. Murphy, Hugh M. Caldwell*, and *H. B. Butler*, for respondent.

FULLERTON, J.—This is an appeal from a judgment entered upon the verdict of a jury finding the appellant guilty of larceny. In the information it is charged that the appellant, in the county of King, state of Washington, on the 4th day of March, 1911, with intent to deprive and defraud the owner thereof, wilfully, unlawfully, and feloni-

[1]Reported in 124 Pac. 135.

ously did buy, receive, and aid in the concealment of certain described stolen property, knowing the same to have been stolen. The evidence introduced at the trial tended to show that, in the early part of March, 1911, the place of business of one Elise Moltman, in the city of Seattle, was broken into and ostrich plumes of a considerable value taken therefrom. Sometime later Mrs. Moltman saw some of the stolen plumes in the show window of a concern doing an outfitting business, conducted by Samuel Paul and Joseph Paul. She reported the discovery to the police, and in company with a police officer, went to the place, where she found and identified plumes to the value of some two hundred and fifty dollars which had been taken from her place of business. The evidence introduced at the trial tended to show that the plumes were brought to the business place of the Pauls by the appellant in a grip, the visit being made shortly before the noon hour; that the appellant inquired of the Pauls whether or not they could use some second-hand plumes; and being informed that they could, opened the grip and took therefrom the stolen plumes, and offered them for sale at $150; that the Pauls made a counter offer for them of $75, and a little later offered $85. The appellant then said he would leave the plumes with them and would come back in a few minutes and let them know whether he would accept that price or not. A little later he came back and said he would take that sum for them. The sale was then made, the purchasers paying the purchase price in cash. The remaining evidence on the part of the state consisted of the statements of the police officer as to the conduct of the appellant at the time of his arrest. It is said that he denied having knowledge of what a plume was until he was shown one on a woman's hat, and denied ever having dealt in them or sold any of them until told that the Paul brothers had said that he sold certain plumes to them; that he then "turned pale" and partially fainted, and made exclamations which might be construed as tending to show guilty knowledge on his part;

that he afterwards related to the police officers how he came
into possession of the plumes; saying that he received them
for sale from a man he had formerly known in Alaska; that,
of the purchase price, he gave the man $80, retaining five
dollars for himself.

It is the appellant's first contention that the evidence is
insufficient to justify a verdict against him, and that the
trial court should have sustained his challenge to the evi-
dence made at the conclusion of the state's case. But we
think the evidence made a case for the jury. It was made
to appear conclusively that the appellant received and dis-
posed of stolen property; and there was evidence, although
not perhaps so conclusive, that he knew at the time he re-
ceived the property that the same had been stolen, and that
he disposed of it with the intent to deprive and defraud the
owner thereof. It is the province of the jury in criminal
cases to pass on the weight and sufficiency of the evidence;
and when the court finds there is substantial evidence of a
fact, it must be left for the jury to say whether its probative
force meets the standard required for a conviction, whether
it convinces them beyond a reasonable doubt of the defend-
ant's guilt.

The court gave the following instruction:

"You are instructed in this case that the following facts
must be established beyond a reasonable doubt by the state
in order to convict the defendant of the crime charged in
the information: 1st, it must be established that the goods,
or some of them, described in the information had, in fact
by some person known, or unknown, been stolen, in King
county, Washington; 2nd, that the said goods had been re-
ceived by the defendant and that at the time he knew that
the same were stolen. In this connection, I instruct you that
knowledge of any particular fact may be inferred from the
knowledge of such other facts as would put an ordinary pru-
dent man upon inquiry, and it therefore is incumbent upon
the state to prove in this case, beyond a reasonable doubt,
either that the defendant had actual knowledge that the
property was stolen, or that he was in possession of facts

and circumstances which would put an ordinary, prudent man upon inquiry."

The concluding clause of this instruction, we think, does not correctly state the rule. While the statute provides that knowledge of any particular fact may be inferred from the knowledge of such other facts as should put an ordinarily prudent man upon inquiry, it is not meant to be asserted thereby that the jury, in a case where knowledge is an essential element of a crime, may find that the accused had such knowledge on evidence that does not convince them of the fact beyond a reasonable doubt. The jury, if they find that the accused had knowledge of facts that should put a reasonable man upon inquiry as to a particular fact, may infer therefrom that he had knowledge of the particular fact, but they are not obligated to draw the inference. The statute lays down a rule of evidence, not one of positive law. Its language is that knowledge of any particular fact "may" be inferred from the knowledge of such other facts as should put an ordinarily prudent man upon inquiry; not that it "must" be so inferred; hence, it was error to instruct the jury that it is sufficient proof that the defendant had knowledge that the property received and disposed of by him was stolen property to prove beyond a reasonable doubt that he had knowledge of facts sufficient to put an ordinarily prudent person upon inquiry as to whether or not it was stolen property. The jury might properly have been instructed that they could infer that the defendant had such knowledge from proofs of the other fact, but they should have been left to draw the inference themselves, and instructed unqualifiedly that, in order to find the defendant guilty, the evidence must convince them beyond a reasonable doubt that he had knowledge at the time he received and disposed of the property that the same was stolen property.

The court also gave the following instruction:

"If any of the property mentioned in this information was taken from the owners without their consent, and against

their will, and with intent to deprive the owners thereof, then such property was stolen property; and if thereafter the defendant, with intent to deprive or defraud the owner thereof, received any part of such property, with knowledge that the same was stolen, he, by that act, committed an act of larceny, and became guilty of larceny; or if he received the same without knowledge that they were stolen, concealed or withheld, or aided in the concealing or withholding of any property, with intent to deprive or defraud the owner thereof, then he became guilty of larceny."

It is conceded by the state that the instruction is made erroneous by the use of the word "without" in the last clause of the instruction, but it is contended that the use of the word was an inadvertence on the part of the court, or perhaps a mistake of the stenographer in taking down the judge's words. But the instruction has other faults than the one indicated. As it is transcribed, it is scarcely intelligible, and it is impossible now to know what idea the jury may have gathered therefrom. The suggestion that the judge's words were not correctly reported in this particular paragraph gains force when the balance of his instructions, which are unusually clear, are considered; but the record is before us over the judge's signature, and we must accept it as a true transcript of the proceedings. As set forth therein, the instruction is error.

The other assignments of error do not require special consideration. The judgment appealed from is reversed and a new trial awarded.

MOUNT, ELLIS, and MORRIS, JJ., concur.

DUNBAR, C. J., dissents.