Commonwealth *v.* McFarland, Appellant.

Argued March 13, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Nelson M. Galloway,* for appellant.

*Marion E. MacIntyre,* Deputy District Attorney, with her *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., June 14, 1973:

The only issue meriting discussion is whether the lower court erred in its charge with respect to the elements of the crime of receiving stolen property.

The evidence at trial was conflicting. Two witnesses testified that appellant did not know that the property in question had been stolen, but there was other evidence from which it could be found that he did. Appellant's argument is that the jury could not properly resolve this conflict because it was told in the charge (to which specific exception was made) that it could find appellant guilty "[i]f the Commonwealth has shown a collection of circumstances which would have led a reasonably prudent man to know that the goods had been stolen." According to appellant this permitted guilt to be found by an objective standard "of doubtful legality and constitutionality".

In a negligence case a defendant may be found liable if a hypothetical "reasonable man" would have had certain knowledge; whether the defendant in fact had that knowledge is immaterial. "Negligence is a departure from a standard of conduct demanded by the community . . . . The standard . . . must be an objective and external one, rather than that of the individual judg-

ment, good or bad, of the particular individual. It must be the same for all persons . . . ." Restatement Torts, 2d, §282 comment c.

By contrast, in a criminal case, with some exceptions not here pertinent, guilt is not objective but personal; the question is not what a reasonable man would have known but what the defendant knew; and the only pertinence in asking what a reasonable man would have known is in considering whether, because a reasonable man would have known it, the defendant did.

The applicability in a criminal case of the personal standard, and not the objective standard, was emphasized in *Commonwealth v. Sendrow*, 119 Pa. Superior Ct. 603, 181 A. 450 (1935). There the lower court had charged the jury that the question at issue before them was whether the defendant "knew positively that the goods were stolen and if he did not know that, whether, by reason of his knowledge of that business and the price of the merchandise, he knew that he was buying it at such a price below the market price, wholesale or retail, for that merchandise, as to put him on notice, to put him on inquiry, as to where the person who was selling him this merchandise could possibly get it and sell it for a price so much below the usual and regular price for that particular character of merchandise." *Id.* at 607, 181 A. at 451. Reversing, this court said: "Circumstances which would lead a reasonably prudent man to suspect that the goods had been stolen, or that would put such a person on inquiry as to the probable source of the goods he was buying may properly be considered by the jury in arriving at the determination of the defendant's guilt, and may lead to a conclusion of guilty knowledge, but a verdict of guilty can rest only on a finding by the jury, from all the evidence, that the defendant *knew* the goods had been stolen when he received them." *Id.* at 607, 181 A. at 451.

It is true that in 1943 The Penal Code was amended, the clause "having reasonable cause to know" being added, the Code thus providing that one who receives stolen property "knowing, or having reasonable cause to know the same to have been stolen," is guilty. Act of June 24, 1939, P. L. 872, §817, as amended by Act of May 21, 1943, P. L. 306, §1, 18 P.S. §4817. This amendment, however, did not overrule *Sendrow* by permitting guilt to be found by an objective standard; it simply declared what *Sendrow* had already held, that in deciding whether the defendant did know the property was stolen, the jury could consider what a reasonable man would have known. If the jury thought the defendant reasonable, no doubt the consideration would go against him; but if it thought him unusually gullible, for example, or stupid, it might still acquit him. Thus, *Sendrow* has continued to be cited with approval, *Commonwealth v. Frankina,* 156 Pa. Superior Ct. 152, 39 A. 2d 628 (1944), which in turn was cited in *Commonwealth v. Gazal,* 194 Pa. Superior Ct. 132, 166 A. 2d 314 (1960).*

In the present case the charge was ambiguous. The jury might have understood the charge as enabling it to find appellant guilty, either if it found that appellant in fact knew the property was stolen, or if it found that a "reasonably prudent man" would have known. There was no definition in the charge, as there would have been in a negligence case, of what a "reason-

---

* Appellant's counsel notes that in The Crimes Code, effective June 6, 1973, there is no reference to "reasonable cause to know," the Code providing that "[a] person is guilty of theft if he intentionally receives . . . property . . . knowing that it has been stolen, or believing that it has probably been stolen . . . ." Act of December 6, 1972, P. L. 1482, No. 334, §3925, 18 Pa. C.S. §3925. It may be granted that this provision adopts a personal standard. This fact, however, does not show that before the provision was enacted there existed an objective standard.

ably prudent man" is, nor any instruction as to how to apply the reasonable man standard. Accordingly, it is possible that despite the reference in the charge to the reasonable man standard, the jury based its finding of appellant's guilt upon a finding of appellant's personal knowledge. However, there can be no substantial assurance that that is what happened, and we should not affirm a conviction on the basis of an assumption that the jury applied the correct standard when it is plain that it might not have. The lower court should have told the jury in so many words that although it could consider what a reasonably prudent man would have known, it could only do so in the course of deciding what appellant in fact knew.

The judgment of the lower court is reversed and the matter remanded for a new trial.

WRIGHT, P. J., WATKINS and JACOBS, JJ., dissent.