[Nos. 45273, 46322, 46289. En Banc. May 15, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JOYCE ANNA SHIPP, *Defendant,* ATIS WALTER KRUMINS, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CHESTER E. VAN ANTWERP, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. DARWIN GARY HINZ, *Petitioner.*

*David Allen,* for appellant.

*Robert C. Boruchowitz* and *Gilbert H. Levy* of *Seattle–King County Public Defender Association,* for petitioners.

512

*Norm Maleng, Prosecuting Attorney, Ronald H. Clark, Senior Deputy,* and *J. Robin Hunt* and *Mark H. Sidran, Deputies,* for respondent.

BRACHTENBACH, J.—These three consolidated cases involve challenges to jury instructions which defined knowledge under the Washington Criminal Code adopted in 1975. The instructions directed the jury to find that a person has knowledge if it finds that "he has information which would lead a reasonable person in the same situation to believe that [the relevant] facts exist." We find that these instructions were based on an incorrect interpretation of RCW 9A.08.010(1)(b)(ii). We hold that the statute merely allows the inference that a defendant has knowledge in situations where a reasonable person would have knowledge, rather than creating a mandatory presumption that the defendant has such knowledge.

## FACTS OF THE CASES

The first case involves a young man, Atis Krumins, who portrayed himself as rather naive and living a lifestyle characterized by sexual permissiveness. Although he often spent the night with his companion Joyce Shipp, he expressed no concern when she spent weekends with other men, from whom she often received gifts. While Atis was at her house, Joyce received a phone call from two men whom she didn't know. She gave the phone to Atis who acted as go–between and arranged a meeting. Using Joyce's car, Atis then chauffeured Joyce and her 14–year–old daughter Yvonne to a drive–in restaurant. They parked near the two men with whom they had talked on the phone. Atis and the two women each in turn conferred with the men about arrangements for acts of prostitution. Joyce accepted $175 and placed it in her car before departing with the two men, who were undercover police officers. Atis Krumins was convicted of knowingly promoting prostitution in both the first and second degrees. RCW 9A.88.070, .080.

The second case involves a conviction for knowingly riding in a stolen car. RCW 9A.56.070(1). In the early morning, Chester Van Antwerp was driving a car, in which his girlfriend was riding, when he ran into a parked car. The two fled the scene on foot and were stopped by a police officer a few blocks away. At trial, his girlfriend testified that Van Antwerp did not know the car was stolen until she told him at the time of the accident. She said she had previously told him it was borrowed, when she asked him to drive her to a methadone treatment center, because he would have refused if he had known it was stolen. Van Antwerp claims he was too sick and too sleepy to notice many details that would indicate that the car was stolen. Van Antwerp's conviction was affirmed by the Court of Appeals. *State v. Van Antwerp,* 22 Wn. App. 674, 591 P.2d 844 (1979).

The third case involves an assault and an attempted rape. Darwin Hinz met his victim at a singles bar and solicited a ride home. At his direction, she drove to his cousin's house and parked in the driveway. When he made sexual advances, she rebuffed him and tried first to start the car and then to get out. He prevented both actions and proceeded to physically abuse her. Intending to run, she suggested that they go inside the house. He escorted her to the door, preventing her escape, and pushed her inside. The defendant's cousin awoke and rescued the victim by fighting with the defendant and ejecting him. Hinz was convicted of attempted rape in the second degree and of a knowing assault with intent to commit rape (second–degree assault) under RCW 9A.36.020. The Court of Appeals reversed the attempted rape conviction and affirmed the assault conviction. *State v. Hinz,* 22 Wn. App. 906, 594 P.2d 1350 (1979).

### INTERPRETATION OF THE KNOWLEDGE STATUTE

At the trials for each of these three cases the jury was instructed on the definition of knowledge in the words of the statute which reads:

(1) Kinds of Culpability Defined.

. . .

(b) *Knowledge.* A person knows or acts knowingly or with knowledge when:

(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

A juror who reads this instruction might interpret part (ii) in any of three different ways. First, the juror might believe that if he concludes that the defendant had received information which would impart knowledge to a reasonable person then he must find, as a mandatory presumption, that the defendant had knowledge. This interpretation of the instruction would not allow the juror to consider the subjective intelligence or mental condition of the defendant.

Second, the juror might believe that, for the purposes of the law, the familiar word "knowledge" is redefined to be different from its ordinary meaning. That is, if an ordinary person in the defendant's situation would have known a fact, then the defendant is deemed to have had "knowledge" under the law, even if he was so unperceptive or inattentive that he did not have knowledge in the ordinary sense.

Third, the juror might believe, from the instructions as a whole, that he must find that the defendant had actual knowledge, and that he is permitted, but not required, to find such knowledge if he finds that the defendant had "information which would lead a reasonable man in the same situation to believe that [the relevant] facts exist."

This ambiguity in the interpretation of a knowledge instruction given in the words of the statute would seriously infringe on the rights of a defendant, if a juror used the wrong interpretation, because only the last of these interpretations is consistent with the statutory scheme created by the Washington Criminal Code, the methods of

proving intent in other jurisdictions, and the state and federal constitutions.

 The first interpretation, which creates a mandatory presumption, is clearly unconstitutional. Presumptions which direct the jury to find the presence of an element of the crime when the prosecution has proved only circumstantial evidence violate the due process requirement that the prosecution must affirmatively prove every element of the crime, as explicated in *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). *E.g., Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979); *State v. Roberts,* 88 Wn.2d 337, 340–41, 562 P.2d 1259 (1977). Because this interpretation is unconstitutional, one of the other two must be preferred.

The second interpretation redefines knowledge with an objective standard which is the equivalent of negligent ignorance. If the defendant is ignorant in a situation where the ordinary man would have knowledge, then the defendant would be deemed to have "knowledge" under the law. Such a redefinition is inconsistent with the statutory scheme which creates a hierarchy of mental states for crimes of increasing culpability. *See* RCW 9A.04.020(1)(d), 9A.08.010(2). Knowledge is intended to be a more culpable mental state than recklessness, which is a subjective standard, rather than the equivalent of negligence, which is an objective standard. For example, under this redefinition, it would be possible to convict every negligent driver who causes injury, in a situation where the ordinary person would have known that injury would result, of second–degree assault, because RCW 9A.36.020(1)(b) makes it a class B felony, punishable by 10 years' incarceration, to "knowingly inflict grievous bodily harm upon another." This punishment is equal in severity to the more serious crime of first–degree reckless manslaughter, RCW 9A.32.060.

 This interpretation of the statute, as redefining knowledge, is also unconstitutional. Statutes which define crimes must be strictly construed according to the plain

meaning of their words to assure that citizens have adequate notice of the terms of the law, as required by due process. "Men of common intelligence cannot be required to guess at the meaning of the enactment." *Winters v. New York,* 333 U.S. 507, 515, 92 L. Ed. 840, 68 S. Ct. 665 (1947); *Seattle v. Pullman,* 82 Wn.2d 794, 797, 514 P.2d 1059 (1973). The word "knowledge" has an ordinary and accepted meaning. A statutory redefinition of knowledge to mean negligent ignorance would completely contradict the accepted meaning. This redefinition does not appear in the same section or even in the same chapter as any of the sections which specify the elements of the crimes. The ordinary person reading one of the criminal statutes would surely be misled if the statute defining knowledge were interpreted to effect such a drastic change in meaning.

■ Because the other two possible interpretations of the statutory definition of knowledge are unconstitutional and inconsistent with the statutory scheme, the statute must be interpreted as only permitting, rather than directing, the jury to find that the defendant had knowledge if it finds that the ordinary person would have had knowledge under the circumstances. The jury must still be allowed to conclude that he was less attentive or intelligent than the ordinary person.

This third interpretation is constitutional. *Sandstrom v. Montana,* 442 U.S. 510, 514–15, 61 L. Ed. 2d 39, 99 S. Ct. 2450, 2454 (1979). It is also consistent with the accepted rule for proving knowledge in other jurisdictions. *See United States v. Gallo,* 543 F.2d 361 (D.C. Cir. 1976); *State v. Sheffey,* 234 N.W.2d 92 (Iowa 1975); *Commonwealth v. McFarland,* 226 Pa. Super. 138, 308 A.2d 126 (1973); *State v. Beale,* 299 A.2d 921 (Me. 1973); *State v. Grant,* 17 N.C. App. 15, 193 S.E.2d 308 (1972); *Cochran v. State,* 255 Ind. 374, 265 N.E.2d 19 (1970); *Commonwealth v. Boris,* 317 Mass. 309, 58 N.E.2d 8 (1944).

This was the standard in Washington as well under the previous statute defining knowledge. *See State v. Tem-*

*bruell,* 50 Wn.2d 456, 312 P.2d 809 (1957); *State v. Ruben-stein,* 69 Wash. 38, 124 P. 135 (1912).

The comparison to the ordinary person has been imported into many legal definitions of knowledge to make it clear to the jury what level of circumstantial evidence is sufficient for it to conclude that the defendant had actual knowledge. *See United States v. Gallo, supra* at 367. But the comparison creates only an inference. The jury must still find subjective knowledge.

### DISPOSITION OF EACH CASE

Atis Krumins claims that he was so naive that he didn't know that Joyce and Yvonne Shipp were engaging in prostitution. It is possible that the jury believed this and yet convicted him because it believed that an ordinary person would have known. The Krumins case is remanded for a new trial.

Chester Van Antwerp claims that he was so unaware because of his illness that he didn't notice many details about the car and his girlfriend's behavior which indicated that the car was probably stolen. It is possible that the jury believed this and yet convicted him because it believed that an ordinary person would have known. The Court of Appeals is reversed and the Van Antwerp case is remanded for a new trial.

In addition to the instruction on the definition of knowledge, instructions Nos. 7 and 11 informed the jury in the Darwin Hinz case that to convict the defendant it must find that he knowingly assaulted his victim with intent to commit rape. Instruction No. 12 then defined assault as follows:

> An assault is an act, with unlawful force, done with *intent* to inflict bodily injury upon another, tending but failing to accomplish it, and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted, but is sufficient if an apprehension and fear of bodily injury is created in another.

An assault is also an *intentional* unpermitted touching or striking of the person or body of another, regardless of whether any actual physical harm is done to the other person.

An assault is also an *intentional* act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury, even though the actor did not actually intend to inflict bodily injury.

(Italics ours.) Since Hinz was convicted, the jury must have found that he assaulted his victim, as assault is defined in instruction No. 12.

The instruction allowed the jury to find an assault on any of three alternative theories: (1) that Hinz *intended* to inflict bodily injury but failed and created a reasonable fear of injury, (2) that Hinz *intentionally* touched his victim without permission, or (3) that Hinz *intentionally* used unlawful force and caused a reasonable fear, but had no intent to inflict bodily injury. Each one of these alternatives required an intentional act on the part of Hinz. The jury necessarily found that Hinz acted intentionally. By law, he also acted knowingly. RCW 9A.08.010(2). Inclusion of the ambiguous definition of knowledge in the jury instructions was therefore harmless error.

Unlike Krumins and Van Antwerp, Hinz has not urged that he was only negligently ignorant. Since he does not claim that he didn't know that he was assaulting his victim, his claim of error is merely one of form, not of substance. The conviction of Hinz, as modified by the Court of Appeals, is affirmed.

## REMAINING ISSUES RAISED BY KRUMINS

Krumins was convicted of promoting prostitution under the following statute:

(1) A person is guilty of promoting prostitution in the first degree if he knowingly:

. . .

(b) Advances or profits from prostitution of a person less than eighteen years old.

RCW 9A.88.070(1). This statute was interpreted in jury instruction No. 2, submitted by the prosecution, as requiring knowledge only that the defendant was advancing or profiting from prostitution but no knowledge that the prostitute was under age. Krumins claims that the prosecution must also prove knowledge that the prostitute was under 18.

The State argues that this statute is analogous to RCW 9.79.020,[1] the former carnal knowledge statute. In *State v. Randolph,* 12 Wn. App. 138, 528 P.2d 1008 (1974), the Court of Appeals examined the carnal knowledge statute and concluded that a reasonable and good faith belief that the consenting child was of age is no defense, because the legislature did not include any requirement of knowledge.

But in the promoting prostitution statute, the legislature has specifically included the requirement of knowledge. The word "knowingly" precedes a colon and modifies everything which follows the colon.

The jury must be instructed that, although it may infer knowledge from circumstantial evidence which suggests that an ordinary person would have known she was under age, it must find that the defendant knew she was under 18 years old.

The remaining issues raised by Krumins were either disposed of in *State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979), or require no consideration since the case must be remanded for a new trial.

UTTER, C.J., and STAFFORD, HOROWITZ, HICKS, and WILLIAMS, JJ., concur.

ROSELLINI, J. (dissenting)—The defendants in these cases were charged with crimes having knowledge as one of their

---

[1] "Every male person who shall carnally know and abuse any female child under the age of eighteen years, not his wife, and every female person who shall have sexual intercourse with any male child under the age of eighteen years, not her husband, shall be punished as follows: . . ." Laws of 1943, 1st Ex. Sess., ch. 112, § 184 (repealed 1975).

elements. The same legislature which prescribed the elements of these crimes furnished its own definition of the word "knowledge", giving it the meaning which it intended it to have where it is included as an element of a crime. That definition includes both actual and constructive knowledge. The definition of constructive knowledge contained in this act is one well known to the law and one which has long enjoyed judicial approval.

It is well settled that the power to decide what acts shall be criminal, to define crimes, and to provide what the penalty shall be is legislative. *Hendrix v. Seattle,* 76 Wn.2d 142, 456 P.2d 696 (1969), *cert. denied,* 397 U.S. 948, 25 L. Ed. 2d 129, 90 S. Ct. 969 (1970); *McInturf v. Horton,* 85 Wn.2d 704, 538 P.2d 499 (1975), affirmed that case upon this issue, while overruling its holding upon another. Thus, the question whether knowledge is an element of a crime is legislative, not judicial. And if the legislature can omit the element of knowledge entirely from its definition of a crime, by what logic can we deny it the right to make constructive knowledge an element?

Here, the jury was instructed in the words of the statute defining knowledge. I can find nothing in the cited United States Supreme Court cases which would indicate that such an instruction offends due process. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), was a case in which the court held that due process requires proof of guilt beyond a reasonable doubt in criminal cases, whether juvenile or adult. There the juvenile judge had instructed that proof must be made by a preponderance of the evidence. We do not have that issue in this case.

*Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979), was a case in which the high court held that an instruction advising the jury that the law presumes a person to have intended the natural and probable consequences of his acts operated to shift the burden of proof from the State to the defendant (upon the element of intent) where there was no instruction delineating the

quantum of proof which would be needed to rebut the presumption.

In neither of those cases did the court have under consideration a legislative definition of an element of a crime. Neither is authority for the majority position here. Certainly they do not stand for the proposition that the legislature may not define such words as "intent" or "knowledge" for purposes of its own criminal statutes. There have been rare instances where a legislative body has adopted such an arbitrary definition of a word that it does not logically and fairly describe that which it purports to define. A definition may be so far afield that it does not give notice of the forbidden conduct or it may result in imposing punishment for conduct which could not be otherwise prohibited. *See Seattle v. Buchanan,* 90 Wn.2d 584, 605–06, 584 P.2d 918 (1979). It is not suggested that either of those evils is present here.

The majority seems to feel that the legislative designation of the elements of a crime and its definition of those elements must make allowances for defenses such as mental irresponsibility and intoxication. The statute defining the crime requires a person to respond to the standard of reasonableness. It can hardly be conceived that the legislature intended that a person having information which would put an ordinary person on notice that he is about to engage in harmful conduct, should escape liability by alleging that he simply wasn't paying attention to what was going on.

If, for some legitimate reason, a defendant was incapable of understanding that which a reasonable person would have understood, the statutes allow him to set that fact up. As a matter of fact, there is nothing in the statute to preclude a defendant from showing that he did not "have" the pertinent information, even though a reasonable person would have perceived it under the same circumstances. That is what the defendants attempted to show in this case. The likelihood of jury acceptance of such evidence is another matter.

Reading this statute, it is apparent to me that the legislature intended that persons who ought to have known what they were doing should be punished the same as persons who actually knew. It was for the legislature to decide whether the two groups are equally culpable, and not a judgment to be made by this court.

In none of the cases before us could a sensible jury be expected to return any verdict other than that which was rendered, regardless of the semantic changes that may be injected into the instructions. If these changes have significance, they amount to a rewriting of the statue, without excuse or authority. If they have no impact on the legislative provision, they are not of sufficient substance to warrant the granting of two new trials, both of which are almost certain to be not only burdensome to the taxpayers and the lower courts but useless to the defendants as well.

I would affirm the judgment.

WRIGHT and DOLLIVER, JJ., concur with ROSELLINI, J.

Reconsideration denied July 3, 1980.