IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| STATE OF WASHINGTON, | ) | No. 72538-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CHRISTOPHER C. ZANDER, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 9, 2015 |

SCHINDLER, J. — Christopher C. Zander appeals his conviction for five counts of

felony violation of a no-contact order under RCW 26.50.110(5).[1]  Zander argues

prosecutorial misconduct during closing argument deprived him of the right to a fair trial.

We disagree, and affirm.

From 1991 to 1994, Deborah Condon and Christopher C. Zander were in a

romantic relationship.  In 2000, Condon moved to a house in Maple Falls.  The house is

on a cul-de-sac with three other houses.  Condon installed a fence around the house.

In 2003, Condon obtained a no-contact order prohibiting Zander from contacting

her.  In 2004, Condon installed 20 surveillance cameras on her property.

---

[1] We note the legislature amended RCW 26.50.110 twice in 2015.  SUBSTITUTE H.B. 1316, 64th
Leg., Reg. Sess. (Wash. 2015) (adding temporary protection orders under chapters 7.40 and 74.34 RCW
to the statute); SUBSTITUTE S.B. 5631, 64th Leg., Reg. Sess. (Wash. 2015) (adding a fine for a violation of
a domestic violence no-contact order).  Because neither amendment affects subsection (5) of RCW
26.50.110, we refer to the current version of the statute.

In 2005, Zander was convicted of felony violation of a no-contact order (FVNCO) and second degree burglary. At sentencing, the court entered a no-contact order prohibiting Zander from contacting Condon for 10 years. Zander signed and received a copy of the order.

In the early morning hours of April 7, 2012, Zander threw items from his car toward the gate to the driveway of Condon's house. Condon called the police. The police recovered a package of snack cakes, several small apples, a work light, and a small bottle of alcohol.

On April 20, the court entered another no-contact order prohibiting Zander from contacting Condon. Zander signed and received a copy of the no-contact order. On December 13, the court entered a third no-contact order prohibiting Zander from contacting Condon for life. Zander signed a Department of Corrections (DOC) form acknowledging that a no-contact order prohibited him from contacting Condon.

DOC supervision of Zander ended on January 14, 2014. DOC case manager Andrea Holmes met with Zander and explained his ongoing obligation to comply with the no-contact orders.

On January 23, 2014, Condon saw Zander throw a purse over the front gate. A Whatcom County Sheriff Deputy responded. Inside the purse, the deputy found two flashlights wrapped in toilet paper, two perfume samples, a sunglasses case containing four small pencils, a sealed envelope containing four handwritten notes on yellow paper, some coins, and a $1 bill.

On January 31, the court entered a fourth no-contact order prohibiting Zander from contacting Condon. Zander signed and received a copy of the no-contact order.

On May 5, Condon watched from her bedroom window as Zander drove up to the gate, got out of his car, and threw rolls of carpet over the gate. On May 15, the court entered a fifth no-contact order prohibiting Zander from contacting Condon. Zander signed and received a copy of the no-contact order.

At 10:30 p.m. on July 2 as Condon was driving home, she saw Zander's car parked in front of her house and Zander standing under a street light. Condon parked in front of a neighbor's house and honked the horn. Two of her neighbors came outside. Zander grabbed a flashlight and went into a nearby wooded area. Zander then walked back to his car and drove away. Condon called the police.

Condon's video surveillance camera recordings show that on July 3, Zander approached Condon's house at 3:00 a.m. and again at 7:40 a.m. The video shows Zander throwing several items toward Condon's house. A Whatcom County Sheriff Deputy took the items Zander threw near Condon's house into evidence.

The State charged Zander with five counts of FVNCO under RCW 26.50.110(5). Zander pleaded not guilty. Before trial, the court found Zander competent to stand trial and aid in his defense.

A number of witnesses testified during the three-day jury trial including Condon, DOC case manager Holmes, several Whatcom County Sheriff Deputies, and Zander. The court admitted into evidence the no-contact orders and the surveillance video recordings.

Zander testified that he went to Condon's house because he was following a "directive" or "mandate" from a quantum computer. On cross-examination, Zander conceded he knew the no-contact orders prohibited him from going to Condon's house.

3

Zander admitted he went to Condon's house and left items. The jury convicted Zander as charged of five counts of FVNCO.

Zander argues prosecutorial misconduct during closing argument denied him a fair trial. A defendant alleging prosecutorial misconduct during closing argument must establish that the conduct was both improper and prejudicial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). If the defendant does not object, we will not reverse unless the prosecutor's statement was "so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994) (citing State v. Hoffman, 116 Wn.2d 51, 93, 804 P.2d 577 (1991)). Any allegedly improper statements must be viewed in the context of the issues in the case, the evidence, and the instructions to the jury. State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). Prosecutorial misconduct is prejudicial where there is a substantial likelihood the improper conduct affected the jury's verdict. State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007).

Zander contends the prosecutor improperly disparaged defense counsel during closing argument. It is improper for the prosecutor to make disparaging comments related to "defense counsel's role or impugn the defense lawyer's integrity." Thorgerson, 172 Wn.2d at 451. In Thorgerson, the court held the prosecutor improperly argued the defense counsel's argument was " 'bogus' " or a " 'sleight of hand,' " but concluded the misconduct was not likely to alter the outcome of the trial. Thorgerson, 172 Wn.2d at 451-52.

Here, the prosecutor stated at the beginning of closing argument, "[T]here will be other things argued in the next hour or so that encourage you to go beyond what your duty is as a juror." The defense counsel objected. The court instructed the jury it "should consider the lawyer's arguments and statements as intended to help you understand the evidence and [apply] the law to the evidence." The court reminded the jury of the court's instructions, which included the jury's "duty to decide the facts in this case based upon the evidence presented."

We conclude the court's curative instruction to the jury alleviated any prejudice. In addition, the prosecutor's statement was not likely to alter the outcome of the trial.

Zander argues the prosecutor improperly appealed to the passion and prejudice of the jury. A prosecutor commits misconduct by appealing to the passion or prejudice of the jury. State v. Belgarde, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988). A prosecutor may express reasonable inferences from the evidence but may not suggest that evidence not presented at trial provides additional grounds for finding a defendant guilty. Russell, 125 Wn.2d at 87.

At the beginning of closing argument, the prosecutor stated:

I said nearly a week ago now that this case was about doing what you can to protect yourself. . . . This case is not about the mental illness of Mr. Zander, it's not how Defense had argued it to you. This case is about Deborah Condon doing what she can to protect herself.

At the end of closing, the prosecutor argued:

[A]n effort has been made to make this about Mr. Zander in the last, Wednesday last week and here again this morning, this case is not about Mr. Zander, this case is about Ms. Condon and the efforts we go through to protect ourselves, that's what you heard about. So I ask you to find Mr. Zander guilty of five different charges, five different crimes he's committed in this case.

5

Defense counsel did not object. However, before rebuttal, defense counsel objected to the prosecutor arguing that "it's the duty of the jury to protect a victim" as an "inappropriate comment on the law and the realm of the jury."

During rebuttal, the prosecutor argued, "I want you, when you deliberate, to think about Deborah Condon, okay. I want you to think about how she would ask you to exercise that power that you do have." Defense counsel objected. The court directed the prosecutor "to proceed on to your next point." The prosecutor then argued, "This case is not about Mr. Zander, this is about doing what you can to protect yourself." After defense counsel objected, the court directed the prosecutor to focus on "factual issues that were raised in the defense closing." The prosecutor then addressed the elements as set forth in the to-convict jury instruction and asked the jury to focus on the evidence supporting the elements of the crime.

> And at the end of your deliberation I submit that what you'll find is that Christopher Zander did those things on those five different occasions; April 7th, January 23rd, May 5th, January 2nd and again on July, excuse me, on July 2nd and again on July 3rd, that he committed violations of the protection order that protected Deborah Condon and I ask you that you find him guilty.

We conclude the prosecutor's argument was not improper. The undisputed evidence established Condon obtained no-contact orders to protect herself from Zander. We also conclude there was not a substantial likelihood that the prosecutor's argument affected the jury verdict.

Last, Zander argues that the prosecutor committed misconduct by misstating the law in describing the "knowledge" element of the crime of FVNCO. Zander relies on State v. Allen, 182 Wn.2d 364, 380, 341 P.3d 268 (2015), to argue the prosecutor

6

committed misconduct by misstating the law. In <u>Allen</u>, the State charged the defendant as an accomplice, alleging he promoted or facilitated the premeditated first degree murder committed by the principal. <u>Allen</u>, 182 Wn.2d at 369-70. The prosecutor repeatedly argued the jury could convict the defendant if he " 'should have known' " the principal was going to commit the crime. <u>Allen</u>, 182 Wn.2d at 371-72. The court concluded the prosecutor committed prejudicial misconduct by misstating the law of accomplice liability. <u>Allen</u>, 182 Wn.2d at 374-75. The court held the State had the burden of proving the defendant actually knew he was promoting or facilitating the principal in the commission of the crime. <u>Allen</u>, 182 Wn.2d at 374. Under Washington law, "a person has actual knowledge when 'he or she has information which would lead a reasonable person in the same situation to believe' that he was promoting or facilitating the crime eventually charged." <u>Allen</u>, 182 Wn.2d at 374 (quoting RCW 9A.08.010(1)(b)(ii)). "To pass constitutional muster, the jury must find actual knowledge but may make such a finding with circumstantial evidence." <u>Allen</u>, 182 Wn.2d at 374 (citing <u>State v. Shipp</u>, 93 Wn.2d 510, 516, 610 P.2d 1322 (1980)).

Here, unlike in <u>Allen</u>, the prosecutor correctly stated the law with respect to Zander's knowledge. The prosecutor correctly used the statutory language in arguing that Zander knew of the no-contact orders. The prosecutor argued, in pertinent part:

> And then importantly the last part of this instruction on knowledge is if the person has information that would lead a reasonable person in the same situation to believe that the facts exists [sic], the jury, you, is permitted to find that he acted with knowledge of that fact. Okay, so it's even the law that you've been instructed on goes even further than you believing Mr. Zander knew that these protection orders were in place and that he was violating them. If a reasonable person would have had the information to know that, that's also a permitted showing of knowledge for this case, okay. And we know that a reasonable person in the shoes of

> Mr. Zander would know that these orders were in place because he sat in court, was told the orders were in place by a judge, signed his name on them, put his fingerprints on them, was reminded of them on numerous occasions by Ms. Holmes, a reasonable person in the mind of Mr. Zander would know those orders are in place.

Zander did not object.

We conclude that in context, the prosecutor did not misstate the law. In any event, the argument was not "so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." Russell, 125 Wn.2d at 86.

We affirm the jury conviction.

WE CONCUR: