# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | No. 76002-5-I |
| Respondent, | |
| v. | DIVISION ONE |
| SALLYEA O'NEAL MCCLINTON, | UNPUBLISHED OPINION |
| Appellant. | FILED: April 16, 2018 |

LEACH, J. — Sallyea McClinton appeals his convictions for one count of failure to register as a sex offender and two counts of failure to comply with community custody. He claims that the State deprived him of a fair trial twice in its closing argument by misstating the statutory knowledge standard and shifting the burden of proof. The State concedes that its misstatement of the knowledge standard prejudiced McClinton on the failure to register charge because it addressed the sole disputed issue, whether McClinton knowingly failed to comply with a requirement of sex offender registration. Because the record establishes that McClinton knowingly failed to comply with his community custody conditions and he did not dispute this at trial, the State's misconduct did not deprive McClinton of a fair trial on these charges. In addition, the State's closing argument did not shift the burden of proof with the statement that the evidence supported only its theory of the case. We thus reverse in part and affirm in part.

## BACKGROUND

The State released McClinton from confinement on August 3, 2015. As the result of a 1997 conviction for first degree rape, RCW 9A.44.130(1)(a) required that he register as a sex offender. On August 5, he met with his community corrections officer (CCO), Sean Thompson, and registered as a sex offender. He completed a "Change of Address/Homelessness Registration" form.

When a registrant "lacks a fixed residence," he must report to the sheriff weekly.[1] The registration form requires that an offender who lacks a fixed residence initial a particular section to acknowledge his understanding of the weekly reporting requirement. Although McClinton did not initial this section, he identified himself as homeless without an address. He did not check in weekly.

On August 6, the Department of Corrections (DOC) fitted him with a GPS device (global positioning system) as part of his community custody conditions. Thompson told McClinton that he needed to report back to Thompson on August 11. McClinton did not report back.

Police arrested McClinton on September 25. The State charged him with failure to register as a sex offender and failure to comply with community custody. On July 21, 2016, the State released him from jail where it had been holding him on a different charge. He reported to Thompson the following Monday. The DOC fitted him with a GPS for a second time and told him to report back on August 2.

---

[1] RCW 9A.44.130(6)(b).

He did not report back. The State charged him with another count of failure to comply with community custody. A jury found him guilty of all three counts. He appeals his convictions.

## ANALYSIS

### Prosecutorial Misconduct

McClinton asserts that the State committed prejudicial misconduct in its closing argument by misstating the statutory knowledge standard and shifting the burden of proof. Prejudicial prosecutorial misconduct deprives a defendant of his guaranty to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution.[2] To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial."[3] To establish prejudice, a defendant must show a substantial likelihood that the misconduct affected the jury verdict.[4] If the defendant fails to object to the alleged misconduct at trial, he waives the claimed errors unless he establishes that "the [prosecutor's] misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice."[5]

---

[2] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012).
[3] Glasmann, 175 Wn.2d at 704.
[4] Glasmann, 175 Wn.2d at 704.
[5] Glasmann, 175 Wn.2d at 704.

*A. The State Committed Misconduct That Prejudiced the Jury on the Failure To Register Charge When It Misstated the Knowledge Standard in Its Closing Argument*

McClinton asserts that the State engaged in prejudicial misconduct when it misstated in its closing argument that Washington's culpability statute[6] requires that the defendant have only constructive knowledge as opposed to actual knowledge. A prosecutor commits misconduct if she misstates the law.[7] To convict a defendant of failure to register as a sex offender, the State must prove beyond a reasonable doubt that the defendant "knowingly" failed to comply with a requirement of sex offender registration.[8] To convict a defendant of failure to comply with community custody, the State must prove beyond a reasonable doubt that the defendant "willfully" failed to comply.[9] A person acts "willfully" when he acts "knowingly."[10] Washington's culpability statute defines "knowingly" as follows:

> (i) [the defendant] is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.[11]

Our Supreme Court has explained that even though this definition allows the fact finder to find actual knowledge from circumstantial evidence, it includes

---

[6] RCW 9A.08.010(1)(b).
[7] State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015).
[8] RCW 9A.44.132(1), .130; RCW 9A.08.010(b).
[9] RCW 72.09.310.
[10] RCW 9A.08.010(4).
[11] RCW 9A.08.010(1)(b)(i), (ii).

-4-

only actual knowledge, not constructive knowledge based on what a person should know.[12]

> [T]he jury [may] find that the defendant had knowledge if it finds that the ordinary person would have had knowledge under the circumstances. [But] [t]he jury must still be allowed to conclude that he was less attentive or intelligent than the ordinary person [and therefore lacked actual knowledge]. . . . The jury must still find subjective knowledge.[13]

Here, to prove that McClinton knowingly failed to comply with a requirement of sex offender registration, the State needed to prove beyond a reasonable doubt that McClinton had actual knowledge that he needed to report weekly.[14] To prove that he failed to comply with community custody, the State needed to prove beyond a reasonable doubt that with actual knowledge, McClinton either made his whereabouts unknown to the DOC or failed to maintain contact with the DOC as directed by a CCO.[15] The trial court submitted to the jury the Washington Pattern Jury Instruction-Criminal defining "knowingly" that mirrors the statutory definition:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.
>
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

---

[12] See State v. Shipp, 93 Wn.2d 510, 514-17, 610 P.2d 1322 (1980); see also Allen, 182 Wn.2d at 374.

[13] Shipp, 93 Wn.2d at 516-17.

[14] RCW 9A.44.130(6)(b).

[15] RCW 72.09.310.

-5-

> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.[16]

McClinton claims that the State misstated the law in its closing argument when it (1) told the jury that the law required, as opposed to permitted, the jury to make the inference described in paragraph two of the WPIC and (2) suggested that the jury need find only that McClinton had constructive knowledge based on what he should have known as opposed to actual knowledge. The State concedes that it "made a number of inaccurate or unintentionally misleading statements about the knowledge standard, sometimes conflating knowledge and notice, and suggesting that the State only needed to prove constructive knowledge rather than actual knowledge." The State also concedes that its misstatements were substantially likely to have affected the verdict on McClinton's failure to register charge but not on his failure to comply with community custody charges. We agree.

In its closing, the State explained to the jury the WPIC defining the knowledge requirement:

> [Prosecutor]: Pay attention to paragraph number two, although all of it is important. <u>If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, then that meets the requirement of knowledge.</u> The defendant in this case—
>
> [Defense Counsel]: Objection. Your Honor, I object, that's an incorrect statement of the law.

---

[16] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 222 (4th ed. 2016) (WPIC) (emphasis added).

> [The Court]: Okay. The jurors have the jury instructions there, so. Go ahead.
>
> [Prosecutor]: Again, I ask you to pay attention to all of it, all of it is used in defining knowledge; but I want to, in particular, point out this portion to you which is, that if the defendant does have reasonable information or information to lead a reasonable person to conclude a certain thing, then they have knowledge. He has all of these notices showing him that he needed to register, that he needed to pay particular attention on how to do this, and where to do it.

(Emphasis added.)

The State therefore suggested that if the jury found McClinton had information that would lead a reasonable person in his situation to have actual knowledge, then it must find that McClinton had knowledge. This is wrong for two reasons. First, the WPIC makes this inference permissive as opposed to mandatory, and both the WPIC and the culpability statute allow this inference only if the jury finds that circumstantial evidence proves the defendant had actual as opposed to constructive knowledge. Second, in context, the jury may have interpreted the State's argument to mean that the State need prove only constructive knowledge. So the State misstated the law defining the knowledge standard.

The State again misstated the law in its rebuttal argument:

> [Prosecutor]: The defense asserted a couple of times in its theory that the State must prove what is in his mind. Now think about that. First of all, that's not one of the elements that the Court gave you as to what [it] is that the State needs to prove; but also, that makes no sense.
>
> [Defense Counsel]: Objection. Misstates the law. It is an element, Your Honor.
>
> [The Court]: Overruled.

[Prosecutor]: <u>The State does not need to prove what is in anyone's mind, let alone whether this particular mind knew something or did [not] know something.</u>

What the State needs to prove is what is in front of you. Part of how it is that <u>the State proves knowledge is by proving whether a reasonable person in that situation with that particular information would have known.</u>

[Defense Counsel]: Objection, Your Honor. This is in violation of State vs. Allen.

[The Court]: It's a permissible inference; it's not required.

[Prosecutor]: And, again, I pick my words carefully by saying "part of it," because I do want you to look at all of that instruction. The other part of that instruction is that ignorance of the law, essentially, is not an excuse.

[Defense Counsel]: Objection. Misstates the law again. It is an element, Your Honor.

[The Court]: Overruled.

[Prosecutor]: If you'll turn to Instruction 10, you'll read the last sentence of that first paragraph that says, "It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of the crime." All of that, every word of that page goes into finding knowledge. I ask you to consider this very carefully when you consider whether or not this defendant in this case had knowledge.

<u>The State does not bear the burden of proving, by prying someone's mind open, what was in that particular person's mind at a particular time.</u> Knowledge is defined by law for a reason. You have it in front of you, and I trust that you will exercise your judgment, and your reason, and your common sense in applying this when you assess whether or not this individual in front of you had notice about registering.

(Emphasis added.)

The State again misstated the law when it reiterated that "[t]he State does not need to prove what is in anyone's mind" and thus does not need to prove that McClinton had actual knowledge of the reporting requirement. It also suggested for a second time that it could prove the knowledge requirement by showing constructive knowledge when it isolated the language describing the permissive inference. These mischaracterizations of the law constitute misconduct.

Also, consistent with the State's concession, its misstatements likely influenced the jury's verdict on the failure to register charge. First, the trial court's overruling of multiple defense objections during the State's closing argument suggested that the State's interpretation of the law was correct. Second, the State's misstatements related to the sole disputed issue on the failure to register charge. To support his argument that he did not have actual knowledge of the weekly reporting requirement, McClinton introduced evidence that he did not initial the requisite form in acknowledgement of the requirement. As a result of the State's misconduct, any juror who may have doubted that McClinton actually understood the reporting requirement based on his failure to initial the form could have felt obligated to convict him on the ground that a reasonable person would have known of the requirement. The State's prejudicial misconduct requires reversal on the failure to register charge.

By contrast, the State's misconduct was harmless with respect to both convictions for failure to comply with community custody. The evidence in the

record supports only the State's theory that McClinton knowingly failed to maintain contact with DOC or make his whereabouts known. Thompson testified that he informed McClinton that he needed to report back to Thompson on August 11, 2015, which McClinton did not do. And when Thompson next met with McClinton in July 2016 and told him to report back on August 2, McClinton again failed to report back. In closing argument, defense counsel explained that McClinton did not comply with community custody, not because he was unaware of the requirements but because checking in with Thompson prevented him from seeing his family; McClinton did not comply with community custody because it was "onerous." Because the record establishes that McClinton knew his community custody conditions required that he report to Thompson on specific days, which he failed to do, and because he did not dispute this issue at trial, the State's misconduct was harmless with respect to his convictions for failure to comply with community custody.

McClinton makes two additional claims challenging his failure to register conviction. First, he contends that lacking a fixed residence was an essential element of the charge that the State needed to include in the information. Second, he asserts that the trial court abused its discretion by refusing to give his proposed instruction defining the knowledge standard. "'Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the

case on that basis without reaching any other issues that might be presented.'"[17]

Because we reverse McClinton's failure to register conviction on the basis of prejudicial prosecutorial misconduct, we decline to reach these issues.

B. The State Did Not Improperly Shift the Burden of Proof in Its Closing Argument

Next, McClinton asserts that the State committed prejudicial misconduct by shifting the burden of proof in its closing argument. We disagree.

The State commits misconduct when it shifts or misstates its burden to prove the defendant's guilt beyond a reasonable doubt.[18] A prosecutor may commit misconduct if she states in closing argument that the jury should find the defendant guilty because he did not present evidence to support his theory of defense.[19] But "[t]he mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense."[20] McClinton claims that in the State's rebuttal argument, it improperly suggested that he had to disprove its case and offer evidence to prove his innocence when it stated, "There's no evidence pointing any other way but the fact that he had knowingly failed to register, and he willfully failed to comply with the community correctional officers' directives." Because McClinton did not object to this statement at trial, in addition to a showing of misconduct, he must establish that

---

[17] Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wn.2d 284, 307, 174 P.3d 1142 (2007) (internal quotation marks omitted) (quoting Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 68, 1 P.3d 1167 (2000)).

[18] State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).

[19] State v. Jackson, 150 Wn. App. 877, 885, 209 P.3d 553 (2009).

[20] Jackson, 150 Wn. App. at 885-86.

the statement was so flagrant and ill intentioned that a curative instruction could not have cured the prejudice.[21]

The State did not argue that McClinton had an obligation to present evidence or prove his innocence. Instead, it stated that the evidence did not support McClinton's theory of the case and supported only its theory that he knowingly failed to register. The State simply advocated for its position and explained why the jury should find McClinton guilty. The State did not engage in misconduct by shifting the burden of proof.

### Cumulative Error

Finally, McClinton asserts that the alleged errors cumulatively require a new trial. "The cumulative error doctrine applies 'when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial.'"[22] Because we identified a single instance of prosecutorial misconduct as the only error, the cumulative error doctrine does not apply.

### CONCLUSION

The State committed misconduct when it confused constructive knowledge and actual knowledge in its closing argument. Because this misconduct likely prejudiced the jury on the failure to register charge alone, we reverse McClinton's

---

[21] Glasmann, 175 Wn.2d at 704.

[22] In re Pers. Restraint of Morris, 176 Wn.2d 157, 172, 288 P.3d 1140 (2012) (quoting State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000)).

failure to register conviction, otherwise affirm the trial court, and remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Mann, ACJ_                    _Dwyer, J._