[No. 17816–4–I.   Division One.   October 5, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. CASTULO
RIVAS, *Appellant.*

*Raymond H. Thoenig* and *Dori Jones* of *Washington Appellate Defender Association,* for appellant.

*C. Thomas Moser, Prosecuting Attorney,* and *Stephen C. Schutt, Deputy,* for respondent.

SCHOLFIELD, C.J.—Castulo Rivas appeals his conviction for burglary in the second degree. We affirm.

## FACTS

Castulo was charged by information with burglary in the second degree. Police responded to a silent alarm at the Lucille Umbarger Elementary School in the early hours of December 17, 1984. The officers observed two individuals running first inside the building, and then across the school yard. An officer described the two individuals as Hispanic males, both wearing dark clothing, one around 9 or 10 years old, the other older, about 15 to 18 years old, approximately 5 feet 8 inches tall, wearing tennis shoes and a dark coat with little patches on it. The two boys separated, and the smaller one, later identified as Ernie Rivas, Castulo's younger brother, doubled back toward the school. One of the officers chased Ernie, shouting at the child to stop, which he finally did.

The officer advised Ernie of his *Miranda* rights, then asked him what he was doing in the school, and Ernie responded, "We were looking for money." The officer then asked, "Who is we?", and Ernie's answer was, "My brother and I". The officer asked the brother's name, to which Ernie responded, "You find out", and then indicated he

wanted an attorney. The officer handcuffed Ernie, and patted him down, finding approximately $3.70 in change in the child's pockets.

A different officer chased the taller suspect on foot through a nearby residential area, but did not catch him. A K–9 unit began following the tracks left by the taller suspect, but abandoned the search several blocks away from the school. The State presented the testimony of Jose DeLeon, who testified that Castulo appeared at his house, several blocks away from where the K–9 unit left off tracking, in the early morning hours one night in mid–December, although he was not clear of the exact date.

According to DeLeon, Castulo was breathing heavily and asked for a ride to Mt. Vernon. Castulo told DeLeon that he had been in a fight with several men a few blocks away, and that they already had his little brother. When DeLeon could not give him a ride, Castulo washed up in the bathroom and departed, leaving behind a vest he had been wearing. DeLeon contacted Castulo's father, who told the police about the vest. At trial, an officer identified the vest, with its distinctive checkerboard pattern, as an item of clothing worn by the taller suspect, and identified by one of the officers as a jacket.

One of the investigating officers testified that he believed the burglars' point of entry to be through a broken classroom window. The officer also found an empty cash drawer in the office sitting on a desk, away from its normal location. The school's principal testified that, following the burglary, money from the cash drawer was missing—approximately $4.75—and that a wrapped Christmas gift containing a pen was also missing.

One of the officers testified that he impounded a vehicle 2½ blocks away from the school, believing it to be the suspect's vehicle. The car was later found to be registered to Jackie Rivas, Castulo's and Ernie's stepmother. The State attempted to put Ernie on the stand to testify to his statements, but Ernie exercised his Fifth Amendment privilege and refused to testify.

Following a motiòn to dismiss, the defense presented excerpts from the police reports, stating that the officer contacted DeLeon 4 days after the burglary, despite DeLeon's testimony that the officer came the next day. The defense presented no live witnesses. No exceptions were taken to the jury instructions. The jury returned a verdict of guilty on the charge of burglary in the second degree.

## SUFFICIENCY OF EVIDENCE

Castulo argues that the State's evidence was insufficient to support his conviction for second degree burglary.

■ The evidence in a criminal prosecution is sufficient to support a conviction if, considering the evidence most favorable to the State, any rational trier of fact could have found all of the elements of the crime charged beyond a reasonable doubt. *State v. Baeza,* 100 Wn.2d 487, 670 P.2d 646 (1983); *see also Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

The State's evidence introduced at trial here included a description of the taller suspect, matching Castulo's physical characteristics, including age, height, national origin, and clothing. Additional evidence included DeLeon's testimony about Castulo's visit, and the officer's subsequent positive identification of the vest Castulo left behind. The State's evidence also included finding the Rivas vehicle approximately two blocks from the school on the night of the burglary. Finally, the State's evidence included Ernie's statements that he and his brother had broken into the school to search for money.

We are satisfied that a rational trier of fact could have found Castulo guilty of burglary in the second degree beyond a reasonable doubt.

## "TO CONVICT" INSTRUCTION

Castulo argues that reversible error was committed because the court's "to convict" instruction only required the jury to find intent to commit a crime, contrary to Washington law at the time of his trial, and contrary to the information filed in his case.

The information issued against Castulo read as follows:

By this information, the Prosecuting Attorney accuses you of the crime of: Second Degree Burglary . . .

In that you on or about the 17th day of December, 1984, in Skagit County, Washington, did then and there: with intent to commit the crime of theft against a person or property therein, did enter or remain unlawfully into the building of Burlington–Edison School District, 936 W. Victoria, Burlington, WA; proscribed by RCW 9A.52-.030, a felony.

The "to convict" instruction given to the jury did not contain "intent to commit theft", but read in pertinent part:

To convict the defendant of the crime of burglary in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 17th day of December, 1984, the defendant entered or remained unlawfully in a building;

(2) That the entering or remaining was with intent to commit a crime against a person or property therein; and

(3) That the acts occurred in Skagit County[,] Washington.

Instruction 10, in part.

In *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985), the Washington Supreme Court held that the intent to commit a specific named crime inside a burglarized premises is not an element of the crime of burglary under Washington law. The court determined that the intent required by our burglary statutes is simply the intent to commit *any* crime against a person or property inside a burglarized premises. *Bergeron,* at 4. This decision overruled *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983), which held to the contrary. (*Johnson* was a departure from established case law.) However, the crime Castulo was charged with here was alleged to have been committed on December 17, 1984, and his trial on this charge took place on October 23 and 24, 1985, prior to the Washington Supreme Court's decision in *Bergeron,* rendered on December 12, 1985.

Thus, the question of retroactivity is raised. How-

ever, the factual circumstances of this case make it unnecessary to decide the retroactivity of *Bergeron.* Assuming arguendo that *Bergeron* is not retroactive and that the rule of *State v. Johnson, supra,* applied to Castulo's trial, instructional error affecting a constitutional right will be considered harmless if the reviewing court is able to state beyond a reasonable doubt that such error in no way affected the outcome of the case. *State v. Savage,* 94 Wn.2d 569, 618 P.2d 82 (1980). With respect to failure to specify and define the underlying crime in a burglary prosecution, such failure is harmless error where the intention of the perpetrator is not at issue in the trial.

In State v. Stewart, a companion case to *State v. Johnson, supra,* a witness observed three men loading cartons into a car near a store's broken window. The witness identified the vehicle, and Stewart and his codefendants were apprehended in a car similar to the witness's description. At trial, Stewart and his codefendants conceded that the men who unlawfully entered the store intended to and did commit the crime of theft. However, their theory of the case was that they were not those men observed by the witness. *Johnson,* at 627. The *Johnson* court determined that under such circumstances, the failure to specify and define the crime or crimes intended could not have contributed to the verdict and was harmless error. *Johnson,* at 627.

Likewise, in the case before us, the trial court's error in failing to specify the crime or crimes intended by Castulo upon his unlawful entry into the school building was harmless beyond a reasonable doubt because the issue at trial was the identity of the individual who accompanied Ernie in his burglary of the school. Also, there was no borderline noncriminal conduct which the jury could have mistakenly treated as criminal. *Johnson,* at 624.

However, Castulo also argues that the State, by specifying the crime of theft in the information, assumed the burden of proving theft at trial. In *State v. Barringer,* 32 Wn. App. 882, 650 P.2d 1129 (1982), the defendant was charged

with violation of RCW 69.50.403(a)(5), making it unlawful for any person to knowingly or intentionally utter a false or forged prescription. The information alleged that the prescription was for a controlled substance, and the court gave instructions to that effect. The *Barringer* court held that although the statute did not require reference to a controlled substance, by including the reference in the information and in the instructions, it became the law of the case. *Barringer*, at 887–88. *See also State v. Worland*, 20 Wn. App. 559, 582 P.2d 539 (1978).

■ However, in *State v. McGary*, 37 Wn. App. 856, 683 P.2d 1125 (1984), the defendant was charged with taking a motorcycle without the owner's permission. The information contained the vehicle identification number of the motorcycle, but that item was not proven at trial nor was an instruction given. On appeal, the *McGary* court noted that *Barringer* and *Worland* stood for the proposition that when the State alleges an unnecessary fact in the information *and then incorporates the unnecessary fact into the jury instructions,* the instructions become the law of the case, and the State assumes the burden of proving the added fact. *McGary*, at 860. The *McGary* court found that the extra language in the information was mere surplusage. *McGary*, at 860.

Applying that analysis to the case before us, we find that inclusion of the language specifying intent to commit theft in the information did not require that the State prove intent to commit a theft at trial.

### ERNIE'S STATEMENTS

Castulo argues that the trial court's determination that Ernie's statements constituted excited utterances was incorrect, and its finding that Ernie was unavailable was also incorrect.

ER 803, Hearsay Exceptions; Availability of Declarant Immaterial, reads in pertinent part:

**(a) Specific Exceptions.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939), a case decided before the adoption of the Rules of Evidence, the Washington Supreme Court set forth certain requirements for admission of an excited utterance:[1]

(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*Beck,* at 9–10. *See also State v. Fleming,* 27 Wn. App. 952, 621 P.2d 779 (1980); *State v. Downey,* 27 Wn. App. 857, 620 P.2d 539 (1980); *State v. Vargas,* 25 Wn. App. 809, 610 P.2d 1 (1980).

Because the common law requirements for admission of an excited utterance exception to the hearsay rule, as set forth in *Beck,* are more restrictive than those contained in

---

[1]*Beck* refers to "res gestae", rather than to "excited utterance". The different terms refer to the same basic rule. *State v. Dixon,* 37 Wn. App. 867, 684 P.2d 725 (1984).

ER 803(a)(2), strictly speaking *Beck* is no longer controlling. However, in *State v. Dixon,* 37 Wn. App. 867, 684 P.2d 725 (1984), we stated as follows:

> Although ER 803(a)(2) is not as restrictive as the requirements of the common law exception, nevertheless, ER 803(a)(2) should be interpreted in a sufficiently restrictive manner as not to lose sight of the basic elements which distinguish excited utterances from other hearsay statements. This is necessary in order to preserve the real purpose of the exception and prevent its application where the factors guaranteeing trustworthiness are not present.

*Dixon,* at 873. Thus, we find the *Beck* requirements to be useful tools with which to analyze the admissibility of a statement as an excited utterance.

We note further that "[a] statement may constitute an excited utterance even though made in response to a question asked by an investigating officer." *State v. Hubbard,* 37 Wn. App. 137, 146, 679 P.2d 391 (1984), *rev'd on other grounds,* 103 Wn.2d 570, 693 P.2d 718 (1985). Although the determination of whether a particular statement is an excited utterance is within the sound discretion of the trial court, *State v. Fleming, supra,* we find the trial court below erred in deciding that Ernie's statement was an excited utterance.

Utilizing the *Beck* criteria, it cannot be said that Ernie's statements to the officer were a natural declaration or statement growing out of the event rather than a mere narrative of a past, completed affair. Similarly, we believe it is not possible to say that the statements were spontaneous and provoked by the occurrence itself. Although a victim's statement made sometime after the fact may be considered an excited utterance because the victim may still be under the influence of the event, the perpetrator of a crime is in a much different position because he has planned and executed the crime.

However, Ernie's statements concerning the boys' actions inside the school could have been admitted as statements against interest. ER 804(b)(3) reads as follows:

*Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

As with all of the 804(b) exceptions, the declarant must be unavailable pursuant to 804(a). The trial court ruled below that Ernie was unavailable as a witness based on his claim of Fifth Amendment privilege.

Castulo argues that the trial court incorrectly ruled that Ernie was unavailable because Ernie had waived his Fifth Amendment privilege against self–incrimination through his entry of a valid guilty plea and because Ernie, although present in court, never took the witness stand to assert the privilege. Thus, Castulo argues that Ernie was available for purposes of ER 804.

■ We find Castulo's argument unpersuasive. In *State v. Henry,* 36 Wn. App. 530, 676 P.2d 521 (1984), the State argued that a defense witness was not unavailable because he improperly claimed his Fifth Amendment privilege. The *Henry* court found the question of whether the assertion of privilege was proper to be immaterial, because "'[u]navailability' includes situations in which the declarant is 'exempted *by ruling of the court* on the ground of privilege from testifying . . .'"[2] *Henry,* at 534. Thus, the *Henry* court ruled that the defense witness became unavailable once the trial court so ruled. *See also State v. Lee,* 13 Wn. App. 900, 538 P.2d 538 (1975). Similarly here, for the purposes of ER 804 Ernie was unavailable based on the trial

---

[2] "(a) **Definition of Unavailability.** 'Unavailability as a witness' includes situations in which the declarant:

"(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement . . ." ER 804(a)(1).

court's ruling.

In *State v. Valladares,* 99 Wn.2d 663, 664 P.2d 508 (1983), the court outlined three basic requirements for admissibility of inculpatory statements: (a) unavailability of declarant; (b) declarant's statement must so far tend to subject him or her to criminal liability that a reasonable person would not have made the statement unless he or she believed it to be true; and (c) the statement must be accompanied by corroborating circumstances indicating trustworthiness. *Valladares,* at 668.

Although reliability of hearsay evidence can be inferred if the hearsay falls within a "firmly rooted hearsay exception", inculpatory declarations against interest are not in that category. Therefore, particularized guaranties of trustworthiness are required. *State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982). The *Parris* court adopted two sets of trustworthiness factors. Those listed in *United States v. Alvarez,* 584 F.2d 694, 702 n.10 (5th Cir. 1978) are as follows:

1. Whether there is an apparent motive to lie;
2. The general character of the declarant;
3. Whether more than one person heard the statement;
4. Whether the statement was made spontaneously; and
5. The timing of the declaration and the relationship between the declarant and the witness.

The second set of factors is set forth in *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970). These are:

1. Whether the statement contained an express assertion about past fact;
2. Whether the declarant had personal knowledge of the identity and role of the other participants in the crime;
3. Whether the declarant's statement was founded on faulty recollection; and
4. Whether the circumstances under which the statement was made provided reason to believe that the declarant misrepresented the defendant's involvement in the crime.

Turning first to the *Dutton* factors, it is clear that Ernie's

statements were not assertions of past fact, such that he would have time to fabricate responses. It is also clear that Ernie had personal knowledge of the identity and role of the other participant in the crime. There was no possibility for faulty recollection, given the contemporaneous nature of the statements. As for the last *Dutton* factor, the circumstances under which Ernie gave his statement to the officer provided no reason to believe that he was misrepresenting his brother's involvement in the crime. In addition, given that his other statement about looking for money was corroborated by a finding of change in his pocket and the principal's testimony that change was missing from the school, there is no indication that Ernie was not telling the truth.

As for the *Alvarez* factors, (1), (4), and (5) are similar to factors contained in *Dutton*. The second factor in *Alvarez* is the general character of the declarant. The record does not indicate any previous false statements made by Ernie. As for *Alvarez* factor (3), although the statement would be more reliable if more than one officer had heard Ernie's statement, there is no indication the officer was untruthful or had a faulty memory. Although *Alvarez* factor (5) is similar to *Dutton* (3) dealing with possibility of faulty recollection, *Alvarez* factor (5) has an additional item, concerning the relationship between the declarant and the witness. Although a statement made by the declarant to a friendly witness would certainly appear more reliable than a statement to an officer at the time of arrest, we find sufficient reliability exists because Ernie's statements were made so soon after the actual event and clearly without any attempt to fabricate a response.

■ We determine that under either the *Dutton* or the *Alvarez* factors, Ernie's statements were sufficiently trustworthy. Because the trial court can be affirmed on any ground, we find that Ernie's statements were properly admitted. *Wendle v. Farrow*, 102 Wn.2d 380, 686 P.2d 480 (1984).

## KNOWLEDGE INSTRUCTION

Although Castulo failed to take exception to the court's knowledge instruction at trial, he is nevertheless entitled to raise this due process question on appeal because it impacts the fundamental constitutional right of the defendant to proper instruction on the law. *See State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983); *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). The trial court's instruction to the jury on knowledge read as follows:

> A person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.
>
> If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.

Instruction 6.

In *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980), the Washington Supreme Court determined that only if a jury is instructed that it is *permitted but not required* to find knowledge if it finds that the defendant had "information which would lead a reasonable man in the same situation to believe that [the relevant] facts exist" can a definition of constructive knowledge be constitutional. *Shipp,* at 514 (quoting RCW 9A.08.010(1)(b)(ii), in part).

The instruction given here was WPIC 10.02 (revised). This pattern instruction was construed in *State v. Davis,* 39 Wn. App. 916, 696 P.2d 627 (1985). There, we held that the instruction complied with the requirements established in *Shipp* because it allowed the jury to consider the subjective intelligence or mental condition of the defendant. *Davis,* at 919–20.

Additionally, and perhaps more importantly, the jury was required to find the mental state of intent or intentional conduct, not the mental state of knowledge. Thus, the instruction on knowledge was superfluous. In any event, proof of intent also establishes the presence of knowledge.

*Cf. State v. Burns,* 20 Wn. App. 72, 578 P.2d 554 (1978). Thus, no error resulted from this instruction.

INFERENCE CONCERNING UNLAWFUL ENTRY

The trial court's instruction 11 reads as follows:

A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determined [*sic*] what weight, if any, such inference is to be given.

This instruction is embodied in WPIC 60.05 (Supp. 1986).

WPIC 60.05 (Supp. 1986) reads in its entirety as follows:

A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein [unless such entering or remaining shall be explained by evidence satisfactory to the jury to have been made without such criminal intent]. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.

Castulo argues that the instruction could have been understood to require the jury to infer his intent to commit a crime and that this relieved the State of the burden of proving all the elements of the crime charged. In *State v. Johnson,* 100 Wn.2d 607, 674 P.2d 145 (1983), the Washington Supreme Court held that WPIC 60.05 (Supp. 1986) without the "unless" clause may be given in any case because it states no more than a permissible inference. *Johnson,* at 619–20. This was precisely the instruction given here.

Although *State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985) overruled *Johnson* on the specific crime issue, the *Bergeron* court specially noted that it did not overrule *Johnson* on the issue of WPIC 60.05. *Bergeron,* at 18–19. Thus, no error was committed by giving this instruction.

The judgment of the trial court is affirmed.

COLEMAN and PEKELIS, JJ., concur.