IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69797-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SANDRA JESSIE HIMMELMAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 5, 2014 |

SCHINDLER, J. — In a prosecution for forgery and identity theft, the court properly instructed the jury that it is permitted but not required to find that the defendant had knowledge if the jury finds the defendant had information which would lead a reasonable person in the same situation to believe the relevant facts exist. We affirm.

FACTS

On June 27, 2010, Carolyn Rygg's checkbook was stolen from her car. Rygg immediately reported the theft to the police and contacted her bank the next day. Rygg identified the missing checks that were still outstanding and the bank gave her a new account number.

On July 5, Sandra Jessie Himmelman cashed a check for $457.89 at the Fred Meyer in Mill Creek. Himmelman made a purchase of $87 and took the rest in cash. The check was made out to Himmelman, signed by Terry Jones, and identified the

payor as Westgate Business Services LLC. The account number listed on the check was from one of the missing checks on Rygg's old account.

On July 13, the bank contacted Rygg and showed her a copy of the check. Rygg confirmed that she did not own a business named Westgate Business Services and did not know Terry Jones or Sandra Himmelman. Rygg also confirmed that she did not give permission for Westgate Business Services, Jones, or Himmelman to write checks on the account or possess her account number.

The case was assigned to Detective Steven Sieverson. Detective Sieverson called Himmelman to ask about the $457.89 check that she cashed at Fred Meyer. Himmelman immediately began to cry and admitted that she cashed the check. Detective Sieverson asked Himmelman where she got the check. Himmelman said that she got the check "from a guy [named] Mark" but that she did not know Mark's last name or phone number. Himmelman continued to cry and referred to Mark as "a doper" and "a low life." Himmelman said that Mark did not have a job, that he owed her $5,800, and that he refused to pay her. Himmelman told Detective Sieverson she would try to find out more information and call him back. Himmelman called back later and left a message that Mark's last name was Barthy but she did not have a phone number for him. Detective Sieverson was unable to locate Mark Barthy.

Detective Sieverson called Himmelman to set up a time to talk to her. Himmelman met with Detective Sieverson on October 6 and agreed to an audiotaped and videotaped interview. Detective Sieverson gave Himmelman a form advising her of her Miranda[1] rights. Himmelman read and signed the form and agreed to give a written statement.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State charged Himmelman with forgery and identity theft in the second degree. Himmelman did not testify at trial. The court admitted evidence of Himmelman's phone conversation with Detective Sieverson, a redacted version of the taped interview, and her written statement.[2] Detective Sieverson also testified that Himmelman's responses seemed a little slow, as if she were taking prescription medication, but that her behavior was otherwise normal and she did not appear confused during the phone conversation or the interview. The jury found Himmelman guilty of forgery and identity theft in the second degree. Himmelman appeals.

## ANALYSIS

Himmelman contends the trial court erred in giving the jury instruction on the knowledge element of the crimes of forgery and identity theft.[3] Himmelman argues the instruction prevented her from arguing her theory of the case by omitting language that the jury was permitted to find that she acted without knowledge if the jury found she was less attentive or intelligent than the ordinary person. We disagree.

" 'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.' " Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) (quoting Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)). If a jury instruction correctly states the law, the trial court's decision to give the instruction will not be disturbed absent an abuse of discretion. State v. Aguirre, 168

---

[2] Neither Himmelman's written statement nor the video of the interview was designated as part of the appellate record.

[3] As the trial court correctly instructed the jury, forgery requires proof that the defendant knew that the instrument was forged, and identity theft requires proof that the defendant knowingly obtained, possessed, transferred, or used a means of identification or financial information of another person. See RCW 9A.60.020(1)(b); RCW 9.35.020(1) and (3).

Wn.2d 350, 364, 229 P.3d 669 (2010). A trial court's refusal to give a jury instruction is likewise reviewed for an abuse of discretion. State v. Buzzell, 148 Wn. App. 592, 602, 200 P.3d 287 (2009).

Here, the court used the 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 206 (3d ed. 2008) (WPIC), to instruct the jury on the definition of "knowledge." The jury instruction states:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

The trial court refused to give Himmelman's proposed knowledge instruction that included the following language:

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that either 1) he or she acted with knowledge of that fact; or 2) that he was less attentive or intelligent than the ordinary person and did not act with knowledge of that fact.

Himmelman contends that it was error for the court to not give her proposed instruction. Himmelman asserts the instruction was supported by the record and required by State v. Shipp, 93 Wn.2d 510, 610 P.2d 1322 (1980).

In Shipp, the court held unconstitutional an instruction that created a mandatory presumption that if the jury found that the defendant had information which would impart knowledge to a reasonable knowledgeable person, the defendant had knowledge.

4

Shipp, 93 Wn.2d at 514-15. The court concluded that a definition of constructive knowledge can only be constitutional if the jury is permitted but not required to find knowledge if the jury finds that the defendant had information which would lead a reasonable person in the same situation to believe that the relevant facts exist. Shipp, 93 Wn.2d at 516. As the court explained, the comparison to the ordinary person creates only an inference and the jury must still find subjective knowledge. Shipp, 93 Wn.2d at 517. Thus, the court concluded the jury may only be permitted, not directed, to find knowledge if the jury finds that the ordinary person would still have knowledge under the circumstances. Shipp, 93 Wn.2d at 516. The court noted that "[t]he jury must still be allowed to conclude that [the defendant] was less attentive or intelligent than the ordinary person." Shipp, 93 Wn.2d at 516.

Himmelman argues that by not including language that "[s]he was less attentive or intelligent than the ordinary person," she was prevented from arguing that she did not know the check was forged. Himmelman claims that based on the evidence, she was a "[p]oster child for gullibility." Himmelman also points to the testimony of Detective Sieverson describing her as slow in responding, as if she were on some kind of prescription medication, to argue the jury could have found she lacked the requisite knowledge because she was less attentive or intelligent than the ordinary person.

The trial court rejected the argument that the language was mandatory and ruled that the WPIC instruction allowed Himmelman to argue her theory of the case:

> [T]he Court looks carefully at State v. Shipp as well as the comment that accompanies the WPIC, and notes that considerable thought was given to the recommended language that is currently within the WPIC, that the inclusion of the phrase, "The jury is permitted but not required to find that he or she acted with knowledge of that fact" is the clause that is intended to reflect the Shipp decision, and from that the Court believes that the

defense can certainly argue your theory of the case, which is reflected within the proposed jury instruction you submitted.

The trial court did not abuse its discretion in refusing to give the proposed jury instruction. As the trial court ruled, inclusion of this language is not required. In accord with Shipp, WPIC 10.02 allows the jury to consider the defendant's subjective intelligence or mental condition. Shipp, 93 Wn.2d at 516; see also State v. Barrington, 52 Wn. App. 478, 485, 761 P.2d 632 (1988), review denied, 111 Wn.2d 1033 (1989); State v. Kees, 48 Wn. App. 76, 82, 737 P.2d 1038 (1987); State v. Rivas, 49 Wn. App. 677, 689, 746 P.2d 312 (1987); State v. Davis, 39 Wn. App. 916, 919, 696 P.2d 627 (1985). The WPIC 10.02 instruction does not impose a mandatory presumption but simply creates a permissive inference and, therefore, properly states the law. The instruction allowed Himmelman to argue her theory of the case that she acted without knowledge based on the evidence that she was less attentive than an ordinary person. In closing, Himmelman argued, in pertinent part:

> [The prosecutor] talked a lot about Instruction No. 17. That's the knowledge instruction where it says that the jury is committed but not required to think that someone has all these facts and a reasonable person would use those facts to make a judgment that you could if you wanted to presume that person innocent. But you don't have to. You could. There are a lot of reasonable people walking around in the world, a lot of people when they have these facts may be able to see the red flags and may be able to put them together. But there are also those that are not. . . .
>
> . . . .
>
> . . . [Himmelman] was embarrassed. She kept saying I feel so stupid, I honestly believed him. I shop there. She felt so bad she initially felt like she was going to be responsible for it. . . . Her wanting to be a stand-up person does not mean she was guilty at the time the check was passed. That means she's a good person. That means she's gullible and willing to cover for someone else and pay for money down this $5800 hole. . . . She fell for his story. She fell for his getting his life together story. That's not a crime. It is sad. . . .
>
> . . . .

. . . Watch the video. She is clueless. She had no idea she was a suspect. Same gullibility to believe this check in July -- the same gullibility that thought she was a helpful citizen in October.

. . . .

A sophisticated fraud. Not a very sophisticated Sandy.

Because the instruction was a correct statement of the law, Himmelman fails to show the trial court abused its discretion by refusing her proposed instruction.

Himmelman also challenges "Instruction No. 4" defining "reasonable doubt." Himmelman argues that the language, "an abiding belief in the truth of the charge," impermissibly directs the jury to search for the truth rather than evaluate the prosecution's evidence. Instruction No. 4 reads, in pertinent part:

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

Instruction No. 4 mirrors WPIC 4.01, at 85. In State v. Bennett, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007), our supreme court expressly approved of WPIC 4.01 ("Trial courts are instructed to use the WPIC 4.01 instruction to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt."). In State v. Pirtle, 127 Wn.2d 628, 904 P.2d 245 (1995), the court held that the "abiding belief" language did not diminish the pattern instruction defining "reasonable doubt," concluding the additional language was "unnecessary but was not an error." Pirtle, 127 Wn.2d at 658.

Himmelman contends that approval of WPIC 4.01 in Bennett has been called into question by the recent decision in State v. Emery, 174 Wn.2d 741, 278 P.3d 653 (2012). In Emery, the court held a prosecutor's argument that the jury verdict should " 'speak

7

the truth' " was improper, noting the jury's job was not to determine the truth of what happened but whether the offense was proved beyond a reasonable doubt. Emery, 174 Wn.2d at 760. Emery does not address the "abiding belief in the truth" language in WPIC 4.01 that simply elaborates on the meaning of being "satisfied beyond a reasonable doubt."

We affirm.

WE CONCUR: