IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                        Respondent,<br><br>       v.<br><br>KENNETH ALEKSANDER SYKES-JONES,<br><br>                        Appellant. | No.  85279-5-I<br><br>DIVISION ONE<br><br>ORDER WITHDRAWING AND SUBSTITUTING OPINION |

The court has determined that the unpublished opinion in the above-entitled case filed on June 24, 2024 contains a scrivener's error at page 13, line 15, specifically, "[t]he legislature recently amended the *statue*."  Accordingly, we hereby withdraw our opinion and substitute it with a new opinion to address the scrivener's error.

Now, therefore, it is hereby

ORDERED that the unpublished opinion filed on June 24, 2024 is withdrawn and a substitute unpublished opinion shall be filed.  The corrected sentence on page 13, line 15, of the new opinion, shall read as follows:  "The legislature recently amended the *statute* . . ."

_____
Smith, C.J.

_____
Díaz, J.

_____
Bowman, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                       Respondent,<br><br>      v.<br><br>KENNETH ALEKSANDER SYKES-JONES,<br><br>                       Appellant. | No. 85279-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Kenneth Sykes-Jones was charged with assault in the second degree and possession of a stolen vehicle. A jury convicted Sykes-Jones of the latter charge. On appeal, Sykes-Jones contends that the trial court erred by overruling his GR 37 challenge and allowing the State to use a peremptory challenge against juror 13. He also asserts that the jury instruction defining knowledge violated his due process rights because it contained an inaccurate statement of the law. Finally, Sykes-Jones argues that the victim penalty assessment should be stricken because he is indigent.

We agree that the victim penalty assessment should be stricken and remand for the trial court to do so. However, because an objective observer could not have viewed race or ethnicity as a factor in the use of the peremptory challenge and because the jury instruction accurately stated the law, we affirm Sykes-Jones's conviction.

FACTS

On November 4, 2020, Kenneth Sykes-Jones was discovered sitting in the cab of a stolen tow truck by Joel Espana, the truck's owner. Upon finding Sykes-Jones, Espana climbed into the cab to confront him. In response, Sykes-Jones drew a knife and slashed at Espana, slicing his jacket. Sykes-Jones then exited the cab and fled on foot. Law enforcement responding to the scene found Sykes-Jones hiding in a nearby dumpster and arrested him. Sykes-Jones was later charged with assault in the second degree and possession of a stolen vehicle.

Voir Dire

During voir dire, the court asked the jury pool whether anyone had any childcare issues, medical issues, or appointments that would keep them from serving on the jury. Juror 3 indicated that he was a doctor and would miss appointments if selected to serve on the jury. Juror 13 informed the court that she was an educator and expressed concern about missing standardized state testing at her school. The State then asked both jurors whether their work obligations would impact their ability to focus on the case. Juror 3 replied, "No." The State pressed further, asking whether juror 3 would be able to sit through the trial, listen to the evidence, and render a verdict, to which the juror answered, "Yes."

In response to the State's question, juror 13 indicated that she might have difficulty staying focused:

Once I'm here, I will be able to focus, but during the breaks[,] . . . I will be probably checking [to] see if everything is okay.

Juror 13 confirmed that the students would be able to complete the standardized testing in her absence, but she expressed concern over how her absence could affect the students:

My concern is the—because I'm overseeing all those test sessions, if I'm not there—because things happen during testing. If there's something out of ordinary, proctors may not know exactly [what] to do. And if things are not handled correctly, then we—the test might be invalidated. And also, there are students who need accommodations for the tests. If they are not provided, that will be a[n] issue too.

The State asked juror 13 if there was anyone who could cover for her at school. Juror 13 explained that no one at her school could cover for her, but the school district might be able to find someone else to assist.

The State later exercised a peremptory challenge against juror 13. Sykes-Jones raised a Batson[1] challenge in response. The State provided the following justification for the challenge:

My understanding of Batson is [that it is] based on race, gender, or any other protected class. The State is just excusing Juror Number 13 because we believe that she has a hardship being a teacher. It had nothing to do with her . . . race or anything of that nature.

Sykes-Jones informed the court that the standard is "whether or not [the peremptory challenge] could be perceived as being based by race." The State reiterated its reasoning, explaining that the peremptory challenge was "not based on race." The State noted that it had asked juror 13 similar questions as those it asked juror 17, who "appear[ed] to be of the same race" as juror 13.[2] The State

---

[1] Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[2] We infer from the record that jurors 3 and 17 were of Asian descent.

also noted that Sykes-Jones used a peremptory challenge against juror 17. The court agreed with the State and overruled Sykes-Jones's challenge, concluding that the peremptory challenge was "not based upon race, religion, or any of the other Batson factors" and citing juror 13's hardship as the basis for the excusal.

When Sykes-Jones asked for clarification as to whether the excusal was a peremptory challenge or a hardship excusal, the court explained:

> It's a peremptory challenge. I was just making the record outlining the distinction between your Batson challenge and the reason why the peremptory is being exercised.

## Jury Instructions

Later, during discussions about jury instructions, Sykes-Jones raised concern that the knowledge jury instruction, related to the possession of a stolen vehicle charge, misstated the law. Sykes-Jones contended that the instruction did not make clear to the jury that it needed to find actual knowledge and therefore, that the instruction was insufficient. The court disagreed, concluding that the instruction was an accurate statement of law.

The jury acquitted Sykes-Jones of assault in the second degree and the lesser included offense of assault in the fourth degree, but convicted Sykes-Jones of possession of a stolen vehicle. The court sentenced him to 47 months in prison.

## ANALYSIS

### GR 37

Sykes-Jones contends that the State's use of a peremptory challenge against prospective juror 13, who the parties determined was a person of color,

violated GR 37.  We disagree.  Because an objective observer could not view race or ethnicity as a factor in the use of the peremptory challenge, the State's use of a peremptory challenge against juror 13 did not violate GR 37.

As an initial matter, the State contends that Sykes-Jones waived this issue by failing to raise a GR 37 challenge before the trial court.  We disagree.

Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Typically, "an objection must apprise the court of the ground upon which it is made, otherwise no error can be predicated upon it."  State v. Severns, 19 Wn.2d 18, 20, 141 P.2d 142 (1943).

Here, although Sykes-Jones's counsel stated that she was making a Batson objection, it is clear that counsel intended to raise a GR 37 challenge because she described the applicable standard for such a challenge.  Moreover, we note that since the creation of GR 37, any claim of racial bias during jury selection is subject to a GR 37 analysis, regardless of whether counsel frames the objection as a Batson challenge or GR 37 challenge.  See, e.g., State v. Jefferson, 192 Wn.2d 225, 249, 429 P.3d 467 (2018) (modifying Batson framework to incorporate GR 37 analysis); State v. Listoe, 15 Wn. App. 2d 308, 319-20, 475 P.3d 534 (2020) (explaining that GR 37 now applies to claims of racial bias during jury selection, not Batson); State v. Orozco, 19 Wn. App. 2d 367, 373-77, 496 P.3d 1215 (2021) (noting that GR 37 replaced Batson test for racial discrimination in jury selection).  Because Sykes-Jones explained the standard for a GR 37 challenge when making his objection to the State's use of a

5

peremptory challenge against juror 13, Sykes-Jones sufficiently apprised the trial court of the ground upon which the objection was made, and the issue has been preserved for appeal.

Under GR 37, a party or the court "may object to the use of a peremptory challenge to raise the issue of improper bias." GR 37(c). Once such an objection is raised, the party exercising the peremptory challenge must "articulate the reasons the peremptory challenge has been exercised." GR 37(d). The court must then evaluate the proffered reason considering the totality of the circumstances and whether "an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge." GR 37(e). An "objective observer" is someone who is "aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington." GR 37(f). If an objective observer could view race or ethnicity as being a factor in the use of the challenge, the court must deny the peremptory challenge. GR 37(e).

The rule provides a non-exhaustive list of circumstances a trial court should consider when making this determination, including:

> (i) the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of questions asked about it;

> (ii) whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;

(iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;

(iv) whether a reason might be disproportionately associated with a race or ethnicity; and

(v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

GR 37(g).

Our Supreme Court has made clear that this list "is not a checklist for trial courts to cross off but, instead, factors to be considered in making a determination." State v. Tesfasilasye, 200 Wn.2d 345, 358, 518 P.3d 193 (2022). The remedy for a GR 37 violation is reversal. Tesfasilasye, 200 Wn.2d at 362; but see State v. Hale, 28 Wn. App. 2d 619, 641, 537 P.3d 707 (2023), review denied, 2 Wn.3d 1026 (2024) (applying harmless error standard where trial court erred in denying peremptory challenge). We review GR 37 rulings de novo. State v. Booth, 22 Wn. App. 2d 565, 571, 510 P.3d 1025 (2022).[3]

Here, the State exercised a peremptory challenge against juror 13 after the juror indicated that she might be distracted by her work if impaneled. Sykes-Jones raised a GR 37 objection in response. The State then explained that it exercised the challenge because it "believe[d] that [juror 13] has a hardship being a teacher." The State also noted that it asked juror 13 similar questions as juror

---

[3] Our Supreme Court has noted that de novo review may not be appropriate in all circumstances, such as where the trial court's ruling is based on factual findings or credibility determinations. Tesfasilasye, 200 Wn.2d at 356. Here, the court made no such findings, and we apply de novo review. See Hale, 28 Wn. App. 2d at 628.

17, who appeared to be of the same race.  The court then overruled Sykes-Jones's challenge, explaining:

> Well, I do appreciate [Sykes-Jones] bringing it up.  I think it was important for her to make that record.  However, I do agree with [the State].  The real fundamental issue here is not based upon race, religion, or any of the other <u>Batson</u> factors but based upon the fact that Juror Number 13 clearly indicated that she is needed if this—back at school as a teacher or as, I think, an ES—English as a second language coordinator is a better way of putting it.  She is needed on Monday to administer tests that would affect other students, [and] she's the only one who could do it.  And so we'd be running the risk, if we keep her on the jury panel, of making her the alternate—the automatic alternate, because that would be the only way we could maybe go forward with that knowledge.
>
> Because the challenge has been made, I'm going to exercise my discretion not to allow the challenge at this time but to have—to have—Juror 13 will be excused on the basis of her work hardship and solely on the basis of her work hardship.  I want to make that very clear.

The court clarified that juror 13 was dismissed by use of a peremptory challenge:

> I was just making the record outlining the distinction between your <u>Batson</u> challenge and the reason why the peremptory is being exercised.

In evaluating the State's offered reason for striking the juror, we consider the circumstances listed in GR 37(g).  Relevant here are circumstances (i), (ii), and (iii) because the record does not implicate considerations (iv) and (v).

Circumstances (i) and (ii) ask us to consider the number and type of questions posed to juror 13 as compared to other jurors.  GR 37(g)(i)-(ii).  Only one other juror, juror 3, was questioned about whether their work obligations might impact their ability to serve on the jury.  The prosecutor asked juror 3 nine questions, three of which related to the juror's ability to focus on the case, and

asked juror 13 five questions, all of which were about her ability to focus on the case despite work obligations. But though the prosecutor asked juror 13 more work-related questions than juror 3, juror 13 answered equivocally and gave answers that merited further exploration by the prosecutor. For example, while juror 13 indicated that she could focus during the proceedings, she also admitted that during breaks she would "be probably checking [to] see if everything is okay." And contrary to Sykes-Jones's contention that the prosecutor asked needless follow-up questions, the prosecutor's additional questions about the impact of juror 13's absence from her work were clearly intended to flesh out the extent to which juror 13 might be distracted by missing work. The equivocal nature of juror 13's answer invited the prosecutor to ask two additional follow-up questions. In contrast, juror 3 responded unequivocally with one-word answers: when asked whether their work would affect how they viewed the case, juror 3 replied, "No."

We note, too, that the prosecutor also asked follow-up questions of juror 3 when necessary. At one point during jury selection, juror 3 informed the court that he had been the victim of two violent crimes. When asked whether those experiences would impact how he viewed the case, juror 3 answered, "No, I don't think so." In response to this equivocal answer, the State asked juror 3 two follow-up questions, indicating that the State treated both juror 3 and 13 similarly by clarifying the jurors' equivocal responses with additional questions when necessary. Viewed objectively, circumstances (i) and (ii) do not show that juror 13's race or ethnicity was a factor in the State's use of a peremptory challenge.

9

Circumstance (iii) asks us to consider the reasons for the peremptory challenge in light of whether jurors who were not the subject of a challenge gave similar answers as juror 13. Here, no other juror indicated that their work obligations could distract them at any point during the trial. Therefore, circumstance (iii) also does not show that juror 13's race or ethnicity was a factor in the State's use of a peremptory challenge.

Still, Sykes-Jones argues that rather than exercising a peremptory against the juror, the State should have requested that juror 13 be dismissed for hardship. The trial court possesses considerable discretion in determining whether to dismiss a juror for hardship. In general, "no person may be excused from jury service by the court except upon a showing of undue hardship, extreme inconvenience, public necessity, or any reason deemed sufficient by the court for a period of time the court deems necessary." RCW 2.36.100(1).

Here, juror 13 stated that her absence from work might negatively impact her students but that someone else may be able to fill in for her. This concern does not rise to the level of "undue hardship," "extreme inconvenience," or "public necessity" that is typical of a hardship dismissal. Nevertheless, we note that a hardship is neither a presumptively invalid basis for dismissing a juror nor one historically associated with bias.

The reason offered by the State in the present case is a legitimate, race-neutral reason. In light of the totality of the circumstances, an objective observer aware of the realities of implicit bias could not view race as a factor in the State's peremptory challenge.

10

Jury Instructions on Knowledge

Sykes-Jones contends that the trial court's instruction defining knowledge violated his due process rights by allowing the jury to find him guilty based on constructive rather than actual knowledge that the vehicle was stolen. We disagree.

As an initial matter, we note that the parties disagree as to the appropriate standard of review. Sykes-Jones maintains that the applicable standard of review is de novo because the constitutionality of jury instructions is a question of law. The State counters that the trial court's decision to give a proposed jury instruction is reviewed for an abuse of discretion standard. We agree with Sykes-Jones. It is well-established that we review de novo included jury instructions that allegedly contain an error of law. Del Rosario v. Del Rosario, 152 Wn.2d 375, 382, 97 P.3d 11 (2004).

"Basic principles of due process require the State to prove every essential element of a crime beyond a reasonable doubt." State v. Cantu, 156 Wn.2d 819, 825, 132 P.3d 725 (2006); U.S. Const. amend. XIV. Knowledge that a vehicle is stolen is an essential element of the charge of possession of a stolen vehicle. State v. Level, 19 Wn. App. 2d 56, 59, 493 P.3d 1230 (2021). There are two components to this knowledge element: a defendant's possession of the vehicle must be knowing, and the defendant must act with knowledge that the vehicle is stolen. Level, 19 Wn. App. 2d at 59-60.

Sykes-Jones contends that the instruction misled the jury because it failed to clearly explain that actual knowledge is required for the jury to find Sykes-

Jones guilty. State v. Shipp, 93 Wn.2d 510, 610 P.2d 1322 (1980), is instructive here. In Shipp, our Supreme Court considered the constitutionality of a jury instruction that was based on the statutory definition of knowledge set forth in RCW 9A.08.010. 93 Wn.2d at 513-14. That statute provides that

> [a] person knows or acts knowingly or with knowledge when:
>
> (i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
>
> (ii) He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

The court noted that a juror could misinterpret the statute to allow a finding of knowledge "if an ordinary person in the defendant's situation would have known" the fact in question. Shipp, 93 Wn.2d at 514. The court then concluded that the use of the statutory language violated due process because it could be interpreted by the jury as creating a mandatory presumption of knowledge where only a permissive inference is constitutionally permissible. Shipp, 93 Wn.2d at 514-16. The court explained that the knowledge statute was constitutional only when interpreted as "permitting, rather than directing, the jury to find that the defendant had knowledge if it finds that the ordinary person would have had knowledge under the circumstances." Shipp, 93 Wn.2d at 516.

After Shipp, WPIC 10.02 was amended to correct the problem identified by the court. See State v. Leech, 114 Wn.2d 700, 710, 790 P.2d 160 (1990). The revised pattern jury instruction provides that a jury is permitted but not required to find that a defendant acted with knowledge if the defendant has

information that would lead a reasonable person to believe that facts exist that constitute a crime. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (5th ed. 2008) (WPIC). Since then, Washington courts have repeatedly upheld the language in the revised pattern jury instruction as constitutional. See e.g., Leech, 114 Wn.2d at 710; State v. Barrington, 52 Wn. App. 478, 485, 761 P.2d 632 (1988); State v. Rivas, 49 Wn. App. 677, 689, 746 P.2d 312 (1987); State v. Kees, 48 Wn. App. 76, 81-82, 737 P.2d 1038 (1987).

Here, the instruction given by the trial court was the revised pattern jury instruction,[4] which avoids the due process problem identified by the court in Shipp. Therefore, the instruction was an accurate statement of the law and was not unconstitutional.

### Victim Penalty Assessment

Sykes-Jones also contends that because he is indigent, the victim penalty assessment should be stricken. The legislature recently amended the statute

---

[4] The jury instruction at issue states:

A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

13

governing victim penalty assessments to prohibit the imposition of such an assessment if the court finds that the defendant is indigent at the time of sentencing. See LAWS OF 2023, ch. 449, § 1. Although the amendment did not take effect until after Sykes-Jones was sentenced, it applies retroactively to Sykes-Jones because this case is on direct appeal and he is indigent. State v. Ellis, 27 Wn. App. 2d 1, 17, 530 P.3d 1048 (2023). The State does not oppose remand to strike the victim penalty assessment. Therefore, we remand for Sykes-Jones to move the court to strike the fee.

Affirmed and remanded for Sykes-Jones to move to strike the victim penalty assessment.

_Smith, C.J._

WE CONCUR:

_Díaz, J._                          _Bowman, J_